1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JOSE GONZALEZ, JR.,                      No.  2:11-cv-3196-GEB-EFB P

12              Plaintiff,

13        v.                                  ORDER AND FINDINGS AND
                                              RECOMMENDATIONS
14   CATE, et al.,

15              Defendants.

16

17        Plaintiff is a state prisoner proceeding without counsel in an action brought under 42

18   U.S.C. § 1983.  His third amended complaint (ECF No. 62) centers on his challenge to a

19   determination validating him as a gang member, and his resultant assignment to a security

20   housing unit.  Defendants Brackett, Cate, Fernberg, Gamburg, Gower, Harrison, Marquez and

21   Miner move to dismiss.  ECF No. 73.[1]  Plaintiff has filed an opposition (ECF No. 76) and

22   defendants have filed a reply (ECF No. 81).  For the reasons that follow, defendants' motion

23   should be granted.

24   **I.      Defendants' Request to Seal Documents**

25        Before addressing the substantive issues, the court will address defendants' notice of

26   request to seal documents (ECF No. 73-10) which they rely on in their motion to dismiss.

27   _____

28        [1] All other defendants were previously dismissed.  ECF No. 11.

1    Pursuant to that notice, defendants have requested that the court seal three documents –

2    defendants' exhibits X, Y & Z – which were used as source items in plaintiff's gang validation.

3    These documents are:

4    Exhibit X- a June 2, 2008 confidential memorandum documenting a debriefing report;

5    Exhibit Y- a February 14, 2007 confidential memorandum documenting a debriefing

6    report; and

7    Exhibit Z- a September 10, 2001 confidential memorandum documenting a debriefing

8    report.

9    Defendants rely on these documents in their motion, but note that the information

10   contained therein is deemed confidential by the California Department of Corrections and

11   Rehabilitation.  The rationale for this confidentiality is both well supported and compelling.

12   Notably, the declaration of A. Murphy states that these debriefing report memoranda should be

13   kept confidential because their dissemination would pose a potential safety risk to the debriefing

14   inmates who provided gang-related intelligence.  ECF No. 73-9 ¶¶ 9-10.  Accordingly,

15   defendants' request is granted.

16   **II.    Background**

17   After review of plaintiff's third amended complaint pursuant to 28 U.S.C. § 1915A, the

18   court determined that it raised two potentially cognizable claims: (1) a Fourteenth Amendment

19   due process claim against defendants Gamberg, Brackett, Marquez, and Harrison for validating

20   plaintiff as a gang member; and (2) that defendants Cate, Gower, Fernberg, and Miner violated

21   his Fourteenth Amendment right to due process and Eighth Amendment right to be free of cruel

22   and unusual punishment by assigning him to the Security Housing Unit ("SHU") for an extended

23   period of time.  ECF No. 65.  The relevant facts alleged in support of these claims are as follows:

24   **A.  Due Process Claim for Gang Member Validation**

25   Plaintiff was housed at the High Desert State Prison ("HDSP") in July of 2010.  ECF No.

26   62 at ¶17.  On July 20, 2010, plaintiff's property was confiscated because of an ongoing

27   investigation into his alleged overfamiliarity with a member of the unit kitchen staff.  *Id*. ¶¶ 20-

28   21.  He alleges that later that day, he was interviewed by defendant Gamberg who threatened him

1   with gang validation and a transfer to the SHU if he did not confess the specifics of this

2   overfamiliarity. *Id*. ¶¶ 22-23, 28-29.  Plaintiff declined to confess and stated that he did not know

3   what overfamiliarity Gamberg was talking about. *Id*. ¶ 24.

4           Defendants Gamberg and Brackett began reviewing evidence in preparation for plaintiff's

5   validation. *Id*. ¶¶ 31-32.  On August 5, 2010, plaintiff attended a classification hearing and was

6   assigned to administrative segregation pending the outcome of his validation. *Id*. ¶ 33.  Plaintiff

7   was interviewed by defendant Brackett on August 17, 2010 and copies of the source documents

8   used in the validation were to be issued to plaintiff. *Id*. ¶ 34.  He claims, however, that Brackett

9   did not provide the information[2] he relied on to reach a validation decision. *Id*.  Now, plaintiff

10  alleges that the source items are false and unreliable and that defendants Gamberg and Brackett

11  failed to investigate the reliability of each item. *Id*. ¶¶ 35-43.  Regardless, he was validated as a

12  member of the Northern Structure ("NS") gang on September 3, 2010 by defendants Marquez and

13  Harrison. *Id*. ¶ 45.  Plaintiff contends that the procedure and evidence used to validate him was

14  inadequate. *Id*. ¶¶ 34-44.

15      **B.  Due Process and Cruel and Unusual Punishment Claims Related to SHU**

16          **Assignment**

17          On November 4, 2010, plaintiff appeared at a classification hearing where defendant

18  Gower assigned him to an indeterminate term in the SHU as a result of his validation. *Id*. ¶ 52. He

19  states that he was unable to comply with defendants Gower and Cate's requirement that he

20  'debrief' or reveal all gang-related knowledge because he was wrongly validated. *Id*. ¶ 53.

21          Plaintiff was transferred to the California Correctional Institution ("CCI") SHU on June

22  30, 2011. *Id*. ¶ 84.  On October 18, 2012, a gang investigator at CCI determined that plaintiff had

23  no current gang activity that warranted continued assignment to the SHU. *Id*. ¶ 89.  Plaintiff was

24  not assigned back to general population until September 11, 2013, however. *Id*. ¶ 110.  He claims

25  _____

26          [2] It is unclear whether this provision of the complaint is alleging that plaintiff was not
    provided any documents at all on this date, or whether he was not provided insight into

27  defendants' rationale for validating him.  However, in subsequent text of the complaint, plaintiff
    describes the documents as "unreliable" and notes that he submitted a written rebuttal to the

28  evidence, indicating that he was issued the relevant documents.  ECF No. 62 ¶¶ 35-43.

1  that this delay was caused by defendants Fernberg and Miner's failure to refer his case to the

2  Departmental Review Board in a timely manner. *Id.* ¶¶ 97-103.  Plaintiff alleges that his

3  prolonged assignment to the SHU caused him severe physical and mental pain due to: (1) sensory

4  deprivation and lack of human contact; (2) inability to use recreational equipment; (3) inadequate

5  access to the library; and (4) inadequate nutrition. *Id.* ¶ 74.

6      Defendants deny that their actions violated plaintiff's constitutional rights and argue that

7  his complaint fails to allege facts sufficient to state a claim for relief.

8  **III.      Rule 12(b)(6) Standard**

9      To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a

10  complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell*

11  *Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-55, 562-63, 570 (2007)  (stating that the 12(b)(6)

12  standard that dismissal is warranted if plaintiff can prove no set of facts in support of his claims

13  that would entitle him to relief "has been questioned, criticized, and explained away long

14  enough," and that having "earned its retirement," it "is best forgotten as an incomplete, negative

15  gloss on an accepted pleading standard").  Thus, the grounds must amount to "more than labels

16  and conclusions" or a "formulaic recitation of the elements of a cause of action. *Id.* at 1965.

17  Instead, the "[f]actual allegations must be enough to raise a right to relief above the speculative

18  level on the assumption that all the allegations in the complaint are true (even if doubtful in

19  fact)."  *Id.* (internal citation omitted).  Dismissal may be based either on the lack of cognizable

20  legal theories or the lack of pleading sufficient facts to support cognizable legal theories.

21  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

22      The complaint's factual allegations are accepted as true.  *Church of Scientology of Cal. v.*

23  *Flynn*, 744 F.2d 694, 696 (9th Cir. 1984).  The court construes the pleading in the light most

24  favorable to plaintiff and resolves all doubts in plaintiff's favor. *Parks Sch. of Bus., Inc. v.*

25  *Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  General allegations are presumed to include

26  specific facts necessary to support the claim. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561

27  (1992).

28  /////

4

The court may disregard allegations contradicted by the complaint's attached exhibits. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987); *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir.1998).  Furthermore, the court is not required to accept as true allegations contradicted by judicially noticed facts.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citing *Mullis v. U.S. Bankr. Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987)).  The court may consider matters of public record, including pleadings, orders, and other papers filed with the court.  *Mack v. South Bay Beer Distributors*, 798 F.2d 1279, 1282 (9th Cir. 1986) (abrogated on other grounds by *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991)).

Pro se pleadings are held to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  However, the court need not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *See Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003) (citing *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).

**IV.    Analysis**

Defendants raise several arguments in support of their motion.  First and with respect to Marquez, Harrison, Gamberg, and Brackett, defendants argue that: (1) plaintiff does not have a liberty interest in avoiding gang validation; and (2) that, even assuming such a liberty interest is implicated, plaintiff was afforded adequate due process during his validation.  Second, defendants argue that plaintiff's claims against Cate fail because they are wholly premised on his supervisory authority rather than any personal or direct involvement in the violations presently alleged. Third, they argue that defendant Gower did not violate plaintiff's due process or Eighth Amendment rights because he did not make the final determination which caused plaintiff to be confined in the SHU.  Fourth, defendants argue that the due process claims against Cate, Gower, Miner, and Fernberg fail because the process which led to his confinement and ultimate release from the SHU was adequate.  Fifth, defendants argue that plaintiff's Eighth Amendment claims regarding the conditions of his confinement in the SHU fail as a matter of law.  Finally, defendants assert that they are all entitled to qualified immunity.

5

1    For the reasons stated below, the court finds that defendants' motion must be granted.

2    **A. Plaintiff Was Afforded Adequate Due Process During his Gang Validation**

3    The Due Process Clause protects inmates from being deprived of liberty without due

4    process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  Segregating a prisoner for

5    administrative purposes require prison officials to: (1) hold a nonadversary hearing within a

6    reasonable time after the prisoner is segregated; (2) inform the prisoner of the charges against him

7    or their reasons for weighing segregation; and (3) allow the prisoner to present information on his

8    behalf. *Toussaint v. McCarthy*, 801 F.2d 1080, 1100 (9th Cir. 1986).  Additionally, allegations

9    that prison officials lacked sufficient evidence to validate a claimant as a member of a prison

10   gang, are governed by the "some evidence" standard. *Bruce v. Ylst*, 351 F.3d 1283, 1287 (9th

11   Cir. 2003).  This standard, set forth in *Superintendent v. Hill*, requires only that there be some

12   evidentiary basis which supports the prison officials' decision.  472 U.S. 445, 455-456 (1985).

13   Applying this standard "does not require examination of the entire record, independent

14   assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant

15   question is whether there is any evidence in the record that could support the conclusion reached

16   by the disciplinary board." *Id.*  The Ninth Circuit applies this standard because:

17
18   California's policy of assigning suspected gang affiliates to the Security Housing
     Unit is not a disciplinary measure, but an administrative strategy designed to
     preserve order in the prison and protect the safety of all inmates. Although there
19   are some minimal legal limitations . . . the assignment of inmates within the
     California prisons is essentially a matter of administrative discretion.
20

21   *Bruce*, 351 F.3d at 1287 (quoting *Munoz v. Rowland*, 104 F.3d 1096, 1098 (9th Cir.1997)).

22   According to his complaint, plaintiff attended a classification hearing for initial

23   segregation on August 5, 2010 and was issued a lock up order.  ECF No. 62 at ¶ 33.  He was

24   interviewed by defendant Brackett –the Institution Gang Investigations ("IGI") officer - on

25   August 17, 2010 and the documents which were considered in support of his validation were

26   purportedly issued to him at that meeting. *Id.* at ¶ 34.  By his own account, plaintiff was afforded

27   an interview with Brackett on August 18, 2010, during which plaintiff presented the officer with

28

a two page written rebuttal to the documents supporting validation. *Id*. at ¶ 43. Plaintiff does not

dispute that he had an opportunity to present his views to the relevant decision makers (Brackett

and Gamberg), but argues that their failure to "properly investigate" the statements in his rebuttal

rendered that opportunity meaningless. ECF No. 76 at 15. The *Toussaint* factors do not, however,

implicate a right to have the information presented by the inmate "properly investigated." A plain

reading of *Toussaint* indicates that it is sufficient to satisfy due process that plaintiff was afforded

a chance to be heard – which he was in this instance. Even if a right to insist on further

investigation could be implied, it is unclear what a "proper" investigation would entail. In this

case, plaintiff seems to imply that any investigation which resulted in his validation would be

improper because, contrary to defendants' findings, he is not a gang member. This is a poorly

disguised attack on the outcome of the validation, rather than the actual process that plaintiff was

afforded. Based on the foregoing, the *Toussaint* factors are satisfied here. At the time of the

interview, plaintiff understood that he was subject to gang validation, he had been made aware of

the evidence supporting that validation, and he was afforded an opportunity to present his views

to the relevant decision makers.

     Next, the court finds that defendants' decision to validate plaintiff as a gang member was

supported by some evidence. Six source items were used:

    1. An August 6, 2010 chrono explaining the significance of a "kite" or gang note, that
plaintiff wrote and staff intercepted. The gang note described plaintiff's role in the NS gang's
chain of command.

    2. A confidential memorandum describing intelligence from another inmate who had
been validated as an NS member. The inmate identified plaintiff as having a position of authority
within the NS at HDSP.

    3. The third, fourth, and fifth source items refer to an altercation plaintiff had with
another inmate at Pelican Bay State Prison in 1999. They are: (3) a confidential memorandum
describing intelligence from another inmate validated as a member of the NS gang; (4) the rules
violation report which plaintiff was assessed after the fight; and (5) an August 9, 2010 chrono
explaining the connection between the memorandum and the rules violation report.

/////

/////

1

2
     4.  The sixth source item is a confidential memorandum describing intelligence from an NS member who referred to plaintiff as the "block channel"[3] for the gang at Pelican Bay State Prison.

3
ECF No. 73-4 at 14, 20-30; ECF No. 73-5 at 2; Sealed Exhibits X, Y, & Z.[4]  The court, after an *in*

4
*camera* review of each of the confidential source items (sealed exhibits X, Y, & Z), finds that

5
each standing alone would satisfy the some evidence standard.  *See Bruce*, 351 F.3d at 1288 (the

6
statement of a confidential prison informant can satisfy the "some evidence" standard with

7
respect to a gang validation by prison officials).  Additionally, the record contains affirmative

8
statements from prison officials, as required by *Zimmerlee v. Keeney*, 831 F.2d 183, 186 (9th Cir.

9
1987), that safety considerations prevent the disclosure of the informants' names.  ECF No. 73-4

10
at 16, 18; ECF No. 73-5 at 4.[5]  As noted above, this standard does not task the court with

11
/////

12
_____

13
    [3] Defendants define a "block channel" as an inmate responsible for obtaining reports for the gang on newly arrived inmates in their memorandum of points and authorities.  ECF No. 73-1 at 21.

14

15
    [4] These six documents are explicitly referred to in plaintiff's complaint and central to his claims.  ECF No. 62 at ¶ 31.  Their contents are not alleged in or attached to the complaint.

16
However, defendants have produced them with their motion.  Given that plaintiff's claims depend on the content of these documents, which he refers to extensively in his complaint, they are

17
properly considered on this motion.  *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *see also United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not

18
attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.").

19

20
    [5] The court takes judicial notice of these three "Confidential Information Disclosure Forms" which contain statements from prison officials that these identities cannot be released

21
without endangering either the debriefing source or security of the institution.  *See Mack v. South Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986) (holding that a court may take judicial

22
notice of administrative records); *see also Draper v. Rosario*, 2012 U.S. Dist. LEXIS 32036 (E.D. Cal. Mar. 9, 2012) (taking judicial notice of prison records related to claimant's prison

23
disciplinary proceedings).  These particular documents are suitable for judicial notice insofar as they are being incorporated only as evidence that prison officials actually made affirmative

24
statements against the release of the debriefing inmates' identities.  Under Federal Rule of Evidence 201, "[a] judicially noticed fact must be one not subject to reasonable dispute in that it

25
is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be

26
questioned." Fed. R. Evid. 201.  Here, the fact that prison officials made these affirmative

27
statements is capable of accurate determination by way of administrative records whose accuracy cannot be reasonably questioned.

28

1   reassessing their credibility, nor does it require a finding that this evidence "logically precludes

2   any conclusion but the one reached by the [prison officials]." *Hill*, 472 U.S. at 455-57.

3          Plaintiff argues that the "some evidence" standard has not been met because he has raised

4   allegations as to the unreliability of each source item.  ECF No. 76 at 11.  He quotes *Madrid v.*

5   *Gomez* for the proposition that the information relied upon must have "some indicia reliability"

6   and argues that his allegations show that this reliability is lacking here.  889 F. Supp. 1146, 1273

7   (N.D. Cal. 1995) (quoting *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir.  1987).  Contrary to his

8   argument, however, defendants' confidential evidence meets the required "indicia of reliability"

9   insofar as the confidential informants incriminated themselves by providing it and their

10  information was corroborated by other sources.  *See, e.g., Dorrough v. Ruff*, 552 F. App'x 728,

11  730 (9th Cir. 2014) (holding that confidential informants' statements met "some indicia

12  reliability" where they incriminated themselves at the time of providing the information, or where

13  part of the information had already proven true, or where the informant had previously supplied

14  reliable information).

15         For the reasons discussed above, the due process claims against defendants Marquez,

16  Harrison, Gamberg, and Brackett must be dismissed.

17         **B.  Plaintiff's Confinement to the SHU Did Not Violate His Due Process Rights**

18         In order to state a viable due process claim, an inmate must first identify the liberty

19  interest at stake.  *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  As noted above, the Ninth

20  Circuit has held that the process of validation, assignment, and confinement of suspected gang

21  members to the SHU is not a disciplinary measure, but rather an administrative strategy designed

22  to maintain order and ensure the safety of inmates and staff.  *Bruce*, 351 F.3d at 1287.  The court

23  has already found that the procedure used to validate and confine plaintiff in the SHU was

24  constitutionally appropriate and, as such, no due process violation can proceed against defendants

25  Cate, Gower, Miner, or Fernberg on that basis.

26         Plaintiff's claims regarding defendants' failure to timely review and reverse his SHU

27  assignment also fail.  In *Brown v. Or. Dep't of Corr.*, the Ninth Circuit held, for the first time, that

28  "a lengthy confinement without meaningful review may constitute atypical and significant

1    hardship . . . ." 751 F.3d 983, 989-990 (9th Cir. 2014).  *Brown* was decided in April 2014 and

2    held that this right was not clearly established before that date, however.  *Id.*

3           Plaintiff's complaint indicates that he had regular reviews of his SHU assignment.  ECF

4    No. 62 ¶ 54, ¶¶ 84 – 91, ¶ 105.  He contends that these reviews were meaningless, but the record

5    demonstrates that they ultimately secured his release from the SHU.  On October 18, 2012, one

6    such review determined that plaintiff had no current gang activity that warranted continued

7    assignment to the SHU.  *Id.* ¶ 89.  Plaintiff concedes this point in his complaint, but argues that he

8    was not released until September 11, 2013, a delay which he attributes to defendant Fernberg and

9    Miner's deliberate indifference.  ECF No. 62 ¶¶ 89, 97-110.  He states that the California

10   Department of Corrections and Rehabilitation's Operations Manual entitled him to review within

11   180 days of the receipt of his active/inactive chrono - which was received on January 24, 2013.

12   *Id.* ¶¶ 95-100.  First, the violation of prison policies, standing alone, cannot form the basis of a

13   viable section 1983 claim.  *See West v. Atkins*, 487 U.S. 42, 48 (1988).  Second, as noted *supra*,

14   the Ninth Circuit did not conclude that lengthy confinement in segregation without review could

15   constitute an 'atypical and significant hardship' of the sort invoking due process protections until

16   2014.  *Brown*, 751 F.3d at 989-990.  Given that the delay plaintiff complains of occurred entirely

17   in 2013, prison officials cannot be held liable for any violation of his rights associated therewith.

18   *Id.* ("Although we conclude that a lengthy confinement without meaningful review may constitute

19   atypical and significant hardship, our case law has not previously so held, and we cannot hold

20   defendants liable for the violation of a right that was not clearly established at the time the

21   violation occurred.").  Accordingly, even assuming a due process violation by continued

22   assignment to the SHU from June 30, 2011 until September 11, 2013, under *Brown*, it was not

23   clearly established as of that time that prolonged assignment without review violated due process.

24          **C.  Plaintiff's Confinement to the SHU Did Not Violate His Eight Amendment Rights**

25          The Eighth Amendment's prohibition against cruel and unusual punishment protects

26   prisoners from inhumane methods of punishment and inhumane conditions of confinement.

27   *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006) (citations omitted).  "[A] prison

28   official may be held liable under the Eighth Amendment for denying humane conditions of

10

1   confinement only if he knows that inmates face a substantial risk of serious harm and disregards

2   that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825,

3   847 (1994)**.**

4          Conditions of confinement claims have both an objective and subjective component.  *See*

5   *Farmer*, 511 U.S. at 834. "First, the deprivation alleged must be . . . sufficiently serious," and

6   must "result in the denial of the minimal civilized measure of life's necessities."  *Id.*  "[E]xtreme

7   deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*,

8   503 U.S. 1, 9 (1992).  Second, prison officials are only liable if they acted with "deliberate

9   indifference to a substantial risk of serious harm." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir.

10  1998).  Deliberate indifference occurs when a prison official "knows of and disregards an

11  excessive risk to inmate health or safety."  *Farmer*, 511 U.S. at 834. "[T]he official must both be

12  aware of facts from which the inference could be drawn that a substantial risk of serious harm

13  exists, and he must also draw the inference."  *Id.* at 837.

14         As noted above, plaintiff claims that his confinement in the SHU violated his Eighth

15  Amendment rights insofar as it caused him severe physical and mental pain due to: (1) sensory

16  deprivation as a result of denial of telephone calls, contact visits, work training, and educational

17  programming; (2) inability to use recreational equipment; (3) inadequate access to the law library;

18  and (4) inadequate nutrition.  ECF No. 62 ¶ 74.  These inadequacies, as currently alleged, do not

19  give rise to a viable Eighth Amendment claim.

20         First, the lack of work training, educational opportunities, contact visits and telephone

21  calls do not amount to cruel and unusual punishment.  *Baumann v. Arizona Dep't of Corrections*,

22  754 F.2d 841, 846 (9th Cir. 1985) ("General limitation of jobs and educational opportunities is

23  not considered punishment."); *Overton v. Bazzetta*, 539 U.S. 126, 136-37 (2003) (holding that a

24  two year ban on visits to inmates who had committed multiple substance-abuse violations does

25  not violate the Eighth Amendment); *Gerber v. Hickman*, 291 F.3d 617, 621 (9th Cir. 2002) ("[I]t

26  is well-settled that prisoners have no constitutional right while incarcerated to contact visits . . . .);

27  /////

28  /////

1   *Toussaint v. McCarthy*, 597 F. Supp. 1388, 1413 (N.D. Cal. 1984) ("Plaintiffs cite to no authority

2   for the assertion that the complete denial to inmate of access to telephone violates contemporary

3   standards of decency inherent in the eighth amendment").

4       Second, the inability to use recreational equipment, standing alone, does not implicate

5   cruel and unusual punishment.  A complete deprivation of outdoor exercise can violate the Eighth

6   Amendment, but the court is unaware of any authority suggesting that being denied access to

7   'recreational equipment' would give rise to such a violation.  Plaintiff's complaint does not even

8   explain what specific equipment he was denied access while in the SHU.  Regardless, plaintiff

9   concedes that he was allowed to leave his cell to go to a "small concrete cage yard" where he

10   could perform some limited exercise.  ECF No. 62 ¶ 72.  As such, he concedes facts showing that

11   he received constitutionally adequate exercise time.

12       Plaintiff's inadequate access to the law library claim must also be dismissed.  First, this

13   claim implicates the First and Fourteenth Amendments rather than the Eighth Amendment.

14   Second, under the former, a prisoner alleging that his access to the courts was curtailed because

15   of inadequate access to a law library must show that the access was so limited as to be

16   unreasonable and that the inadequate access actually caused him injury.  *Vandelft v. Moses*, 31

17   F.3d 794, 797 (9th Cir. 1994).  This requires showing a "specific instance in which [the claimant]

18   was actually denied access to the courts." *Sands v. Lewis*, 886 F.2d 1166, 1171 (9th Cir. 1989).

19   Here, plaintiff has not alleged that his inadequate access to the law library resulted in a specific

20   denial of access to the courts and his claim fails on that basis.

21       Finally, plaintiff's inadequate nutrition claim is too vague to proceed as currently

22   articulated.  He alleges that he was served "poor food rations, spoiled and rotten food items, bland

23   food, cold food, no nutritional value to the amount and quality of food served" while in the SHU.

24   ECF No. 62 ¶ 74.  As a result, he claims that he suffered hunger pangs, stress, weight loss, and

25   general, unspecified health risks.  *Id.*  Plaintiff has no viable claims with respect to those food

26   servings which were simply bland or cold.  *Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996)

27   (holding that prison food does not need to taste good or be aesthetically pleasing).  It is also

28   unclear what plaintiff means by "poor food rations."  His claims regarding spoiled and rotten food

1  might give rise to a viable claim, however, if pleaded with greater specificity.  Plaintiff has failed

2  to allege, for instance, whether his meals were consistently spoiled or rotten, or whether these

3  inadequacies occurred only on one or two occasions.  He has also failed to allege how each of the

4  defendants[6] were personally involved (if they were at all) in providing him meals while he was

5  incarcerated in the SHU.

6      Based on the foregoing, each of these claims should be dismissed.  Plaintiff should,

7  however, be given leave to amend[7] his complaint to reassert his Eighth Amendment claims and

8  First Amendment access to the courts claims with greater specificity.  *Moss v. U.S. Secret*

9  *Service*, 572 F.3d 962, 972 (9th Cir. 2009) (holding that "dismissal without leave to amend is

10  improper unless it is clear, upon de novo review, that the complaint could not be saved by any

11  amendment").

12  **V.     Order and Recommendation**

13      Accordingly, it is hereby ORDERED that defendants' request to seal is granted.  Within

14  seven (7) days, defendants shall email exhibits X, Y & Z in PDF format to

15  approvedsealed@caed.uscourts.gov.  The Clerk of Court shall file those exhibits – which total

16  forty-seven pages – under seal.  Access to these documents is restricted to the court and

17  authorized court personnel.

18      Further, it is RECOMMENDED that defendants' motion to dismiss (ECF No. 73) be

19  granted and that plaintiff be afforded an opportunity to amend his Eighth Amendment conditions

20  of confinement claims and First Amendment access to the courts claim against defendants Cate,

21  Gower, Miner, and Fernberg within 30 days of any order adopting this recommendation.

22  /////

23  _____

24      [6] He does allege that defendant Cate's policies and practices have contributed to each of the alleged Eighth Amendment violations and that Cate himself has been deliberately indifferent

25  to plaintiff's suffering.  ECF No. 62 ¶ 70.  Plaintiff never refers to any specific policies or practices, however.  Nor does he explain how Cate was made aware of the alleged deprivations.

26  It is well settled that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

27

28      [7] The court finds that any amendment with respect to the other due process claims would be futile and, as such, leave to amend those claims is inappropriate.

13

1       These findings and recommendations are submitted to the United States District Judge

2 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

3 after being served with these findings and recommendations, any party may file written

4 objections with the court and serve a copy on all parties.  Such a document should be captioned

5 "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

6 within the specified time may waive the right to appeal the District Court's order.  *Turner v.*

7 *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

8 DATED:  July 28, 2016.

9

10                 EDMUND F. BRENNAN
                UNITED STATES MAGISTRATE JUDGE

14